UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

21647 LLC,

                              Plaintiff,

              - against -

DEUTSCHE NATIONAL TRUST COMPANY, AS
INDENTURE TRUSTEE FOR NEW CENTURY
HOME EQUITY LOAN TRUST 2005-3,

                              Defendant.

**OPINION AND ORDER**
21 Civ. 4761 (ER)

Ramos, D.J.:

        Plaintiff 21647 LLC brings this action against Deutsche Bank National Trust Company to

establish claim over apartment 49D in a building known as Central Park Place Condominium,

located at 301 West 57th Street (the "Apartment" or "Unit 49D"), and to vacate a mortgage

recorded against the Apartment.  Plaintiff also seeks declaratory judgment that a Sheriff's sale of

the Apartment eliminated any lien Deutsche may have had on it.  Pending before the Court is

Plaintiff's motion for summary judgment and Deutsche's cross motion for summary judgment.

For the reasons set forth below, the Court denies Plaintiff's motion for summary judgment, and

grants Deutsche's motion.

**I.      Factual Background**

        **a.  The Mortgage**

        On November 15, 1990, non-party Hubert W. Pototschnig acquired the Apartment.  *See*

Doc. 29-22, the Unit 49D Deed.  On May 20, 2005, Pototschnig applied for a mortgage loan (the

"Mortgage" or "Loan") in the amount of $620,000, specifying Unit 49D—and its corresponding

section, block, and tax lot number—as collateral.  *See* Doc. 28-6.  That same day, Pototschnig

executed and delivered to New Century Mortgage Corporation ("New Century") an adjustable-rate note (the "Note") which also reflects Unit 49D as the property address.[1]  *See* Doc. 33-1. Also that day, Pototschnig entered into an Error and Omissions Compliance Agreement with New Century, which provided that Pototschnig "agree[d] to fully cooperate and adjust or correct clerical errors relating to the loan documentation that in the opinion of [New Century] will enable [New Century] to sell, convey, seek guaranty or market said loan[.]"  *See* Doc. 29-8.

     In return, Pototschnig received the Mortgage, *see* Doc. 25-3, which references both the Apartment, as well as, apparently mistakenly, another apartment:  Unit 23B, located in the same building.  *See* 43-5, Plaintiff's Response to Deutsche's Rule 56.1 Statement, ¶¶ 21–23.  The record before the Court does not indicate that Pototschnig ever held an ownership interest in Unit 23B.  *See id.* ¶ 24.  Neither do the records for Unit 23B in the New York City Department of Finance Office of the City Register (the "Land Records").  *See* Doc. 29-23.  Plaintiff, too, does not allege that Pototschnig ever held any such interest in Unit 23B.[2]

     The Mortgage consists of a 17-page main form (the "Main Form"), Doc. 25-3 at 3–5, 9–22, a three-page legal description of the Apartment (the "Legal Description"),[3] *id.* at 6–8, and the following four riders:  an adjustable rate rider, adjustable rate rider addendum, a condominium

---

[1] Pototschnig and New Century agreed that New Century could transfer the Note.  *See* Doc. 25-10 at 2.  As such, the Note was facially endorsed in blank, specifying no payee and bearing the undated signature and stamp of a non-party witness.  *Id.*

[2] Deutsche asserts that Pototschnig has never had any ownership interest in Unit 23B; Plaintiff disputes this assertion, but only to the extent that Pototschnig is not party to this action, Pototschnig is not a party in interest with Deutsche, and Deutsche lacks knowledge or information to establish conclusively that its allegation is true.  *See* Doc. 43-5 ¶ 24.

[3] Whether it was due to an error in preparing this exhibit or in the original, the three-page Legal Description is inserted within the 17-page Main Form.  *See* Doc. 25-3 at 3–22.  The parties nonetheless agree that the Mortgage was composed of these materials.  *See* Doc. 43-5 ¶ 9.

rider, and second home rider, *id.* at 26–31 (together, the "Riders").[4]  The section, block, and tax

lot number of Unit 49D appears twice on the on the seventeenth page of the Main Form (i.e., the

notarized signature page), under the signature line.  *Id.* at 22.  The second and third pages of the

Main Form refer to the Note, *id.* at 4–5, which references only Unit 49D, not Unit 23B.  *See* Doc.

33-1.  Moreover, the Riders to the Mortgage each reflect that Unit 49D is the collateral for the

Loan.[5]  Doc. 25-3 at 23–31.  Pototschnig also signed or initialed 18 documents related to the

Loan transaction, all of which reflect that the Loan would encumber Apartment 49D, and none of

which reference Apartment 23B.[6]  Doc. 29 ¶ 10; *see also* Docs. 29-5-8, 29-6, 29-7 (reflecting

each of those 18 signed documents).

On the first page of the Main Form, however, Unit 23B and its corresponding block and

lot numbers are handwritten in the upper-right portion of the page in a section entitled "space

above this line for recording data."  Doc. 25-3 at 3.  The third page of the Main Form also states

in print that Pototschnig grants New Century certain rights to "[t]he Property which is located at

301 W 57th St. 49D New York," but "49D" is crossed out, and "23B" is handwritten next to it.

*Id.* at 5.  Furthermore, the three-page Legal Description attached to Main Form, references only

---

[4] Pototschnig signed or initialed each of the seventeen pages of the Main Form, Doc. 25-3 at 3–5, 9–22, and each page of the four Riders, *id.* at 23–31.  He did not, however, sign any pages of the Legal Description, *id.* at 6–8, or beside any of the handwritten text, *id.* at 3, 5.

[5] The Riders—as well the Note referenced on pages two and three of the Main Form—refer only to the *address* of Unit 49D and not to its lot number.  *Id.* at 4–5, 23–31.

[6] Among these were the Truth in Lending Disclosure Statement, HUD-1 Settlement Statement, Good Faith Estimate, Loan Commitment, Initial Escrow Account Disclosure Statement, Addendum to Escrow Instructions, Tax Escrow Account Designation, Real Property Insurance Escrow Account Disclosure, New York Insurance Disclosure, Impound Authorization, Affiliated Business Arrangement Disclosure Statement, Hazard Insurance Authorization and Requirements, Credit Score Notice, Application Disclosure, 30 Day Letter, Monthly Payment Letter, Closing Instructions, New York Pre-Application Disclosure, and Notice to Borrower not in Special Flood Hazard Area.  *See* Docs. 29-5-8, 29-6, 29-7.  The following six documents filed by Deutsche as part of this collection do not reference any address or apartment number:  Name Affidavit, Equal Credit Opportunity Act, Information for Government Monitoring Purposes, Board Certification, LIBOR Mortgage Loan Program Disclosure, Servicing Disclosure.  *See id.*

Unit 23B and its corresponding .2999% interest in the common elements of the condominium. *Id.* at 6–8.  On August 1, 2005, the Mortgage was recorded in the Land Records against Unit 23B.  *Id.* at 1–2.

### b. The Correction

Approximately four months later, on December 9, 2005, a corrected mortgage (the "Correction"), *see* Doc. 25-4, was filed by First American Title Insurance ("First American"). As indicated by New Century's title insurance policy, First American is a title company that New Century hired to record the Mortgage in the Land Records against Unit 49D.[7]  *See* Doc. 29-9. The Correction specified in an unsigned cover page that:  "This mortgage is being re-recorded," because it "included the wrong legal description and incorrectly recited . . . [U]nit 23B.  The mortgage actually affects . . . [U]nit 49D."  Doc. 25-4 at 4.  Pototschnig denies seeing the Correction or signing it.  *See* Doc. 35, Deutsche's Response to Plaintiff's Rule 56.1 Statement, ¶ 6; Doc. 43-4 at 2, the New York Supreme Court's January 20, 2022 Order.[8]  The Correction consists of a carbon copy of the Mortgage, along with four pages that constitute the correction itself; no signatures or initials of any of the parties to the Mortgage appear on those four pages.

---

[7] Section 4(b) of New Century's title insurance policy authorizes First American to "to do any act . . . which in its opinion may be necessary or desirable to establish . . . the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the Insured." Correcting a mis-recording of the insured Mortgage is a type of corrective action contemplated under Section 4(b).  Doc. 29-9 at 4.

[8] A federal district court may take judicial notice of state court decisions, like this one, "to [assist in] decipher[ing] claims and organiz[ing] a chronology of the factual background."  *Robertson v. Allen*, No. 15 Civ. 11, 2016 WL 205381 at *1 (Jan. 15, 2016 N.D.N.Y.); *see Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 167 (2d Cir. 2012); *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (noting that, in deciding a motion to dismiss for failure to state a claim, the court "may also look to public records, including complaints filed in state court").  This order was issued in connection with a foreclosure action filed by Deutsche in the Supreme Court of the State of New York, New York County, entitled *Deutsche National Trust Company, As Indenture Trustee, For New Century Home Equity Loan Trust 2005-3 v. Hubert Pototschnig, et al.* (Index No.: 109449/2010).

*See* Doc. 35 ¶¶ 18–19; Doc. 43-4 at 3.[9]  On or about December 9, 2005, the Correction was recorded in the Land Records against Unit 49D.  Doc. 43-5 ¶ 26.

### c.  The New Century Bankruptcy & Assignment

On April 2, 2007, New Century filed for a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware.  Doc. 43-4 at 2.

On June 8, 2007, New Century entered into a power of attorney arrangement with Carrington Mortgage Services, LLC ("Carrington"), Doc. 28-15.  Carrington began servicing the Loan on behalf of New Century on July 1, 2007.[10]  *See* Doc. 29 ¶ 14.  "As the servicer, Carrington is the entity responsible for, among other things, receiving and crediting any scheduled periodic payments pursuant to the terms of the note and mortgage, evidencing the loan at issue in this action, . . . and for communicating with Pototschnig regarding the [L]oan, including providing notices pursuant to the terms of the [N]ote and [M]ortgage evidencing the [L]oan."  *Id.* ¶ 3.  Carrington sends Pototschnig monthly mortgage statements, which reference Unit 49D.  *See* Doc. 29-16 (copies of some monthly mortgage statements, dating from October 2012 to February 2019).

On July 22, 2008, the Bankruptcy Court issued a plan (the "Plan"), Doc. 45-1, pursuant to which New Century was dissolved, and all its assets were transferred to the New Century Liquidating Trust (the "Liquidating Trust").  *See* Doc. 43-4 at 3.  According to Article 8(E)(1) of the Plan, all of New Century's assets were "deemed for all purposes" to have been distributed to

---

[9] The final recorded page in the Correction is a November 30, 2005 affidavit from Patrick Brown of First American, wherein Brown claims that the Mortgage was being "corrected" to reflect its encumbrance of Unit 49D and *not* 23B. *See* Doc. 35 ¶ 22.

[10] Carrington currently acts as servicer of the Loan for Deutsche.  Doc. 29 ¶ 14.

the Liquidating Trust.  Doc. 45-1, the Plan, at 31.  In addition, pursuant to Article 9(K) of the

Plan, all claims against New Century were extinguished:

> all notes, agreements and securities evidencing Claims and interests and the rights
> thereunder of the holders thereof shall, with respect to the Debtors, be canceled
> and deemed null and void and of no further force and effect, and the holders
> thereof shall have no rights against the Debtors . . . and such instruments shall
> evidence no such rights, except the right to receive the distributions provided for
> in this Plan."

*Id.* at 60.  The Plan defines "Claim" as a claim against the debtors or the estates (i.e., New

Century), *see id.* at 14, and "Interest" as "all stock, partnership, membership interest, warrants,

options, or other rights to purchase or acquire any shares of stock in the Debtors," *id.* at 20.

On December 22, 2008, Carrington sent Pototschnig a letter, informing him that the

Mortgage has been modified, effective that day, to include a lowered interest rate and to waive

any unpaid late charges.  *See* Doc. 29-10 at 2–5.  The letter also lists Unit 49D as the underlying

property.[11]  *Id.* at 1.  Two months later, on February 1, 2009, Pototschnig defaulted on the

Mortgage (the "First Default").  Doc. 43-4 at 3.

A year later, on February 19, 2010, Deutsche sent Pototschnig a letter of notice of its

intent to foreclose on the Mortgage, which warned that "[f]ailure to cure the delinquency within

30 days . . . may result in acceleration of the sums secured by the Deed of Trust or Mortgage and

in the sale of the property."  *See* Doc. 43-4 at 3; NYSCEF Doc. 61.[12]

Approximately four months later, on June 30, 2010, New Century purportedly assigned

Deutsche, as Indenture Trustee for New Century Home Equity Loan Trust 2005-3 (the "Home

---

[11] True copies of a tax affidavit of Lydia Rainey, sworn to on October 16, 2019, were recorded on October 25, 2019
in the Land Records.  *See* Doc. 33-10.  The tax affidavit reflects additional mortgage tax incurred because of the
capitalization of certain arrears that Pototschnig owed, which resulted in an increase in the mortgage amount,
triggering additional mortgage tax on the new principal.  *See* Doc. 36 at 11.

[12] The court takes judicial notice of this state court filing.

Equity Loan Trust 2005-3"), the Mortgage in exchange for one dollar (the "Assignment"), *see* Doc. 29-11.[13]  Tom Croft, who was then Senior Vice President of Carrington, executed the Assignment as attorney in fact for New Century.[14]  *Id.* at 4.

### d.  The 2010 Foreclosure Proceeding

On July 16, 2010, Deutsche commenced an action in the Supreme Court of the State of New York, New York County, entitled *Deutsche National Trust Company, As Indenture Trustee, For New Century Home Equity Loan Trust 2005-3 v. Hubert Pototschnig, et al* (Index No.: 109449/2010) (the "2010 Foreclosure Proceeding"), against Pototschnig to foreclose on the Mortgage.  *See* Doc. 35 ¶ 26.  In that proceeding, Pototschnig moved for summary judgment on the ground that plaintiff lacked standing, and various other grounds relating to "the failure of proof."  *Id.*  On December 1, 2013, Pototschnig allegedly ceased any further mortgage payments (the "Second Default").  *See* Doc. 43-4 at 3.

On July 13, 2016, the state court issued an order (the "2016 Order") dismissing the 2010 Foreclosure Proceeding without prejudice, explaining that Deutsche lacked standing to bring the action because it "failed to establish any legal interest in the Note and Mortgage, or even that an enforceable mortgage exists."  Doc. 25-10 at 5.  The court explained that a "plaintiff proves it has standing to commence a mortgage foreclosure action by showing that it was both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action was commenced."  *Id.* at 6 (internal quotation marks and citations omitted).  Deutsche argued that it had standing by pointing to:  (1) the Assignment, which occurred on June 30, 2010,

---

[13] The SEC's  publicly available October 25, 2005 Form 8-K describes the Home Equity Loan Trust 2005-A as a collection of "Asset Backed Pass-Through Certificates" and names "Deutsche Bank National Trust Company . . . as trustee under the pooling and servicing agreement[.]"  *Available at*: https://www.sec.gov/Archives/edgar/data/1331494/000102024205001220/nc050a10.htm.

[14] The Assignment was recorded in the Land Records against Unit 49D on July 23, 2010 and states that the Mortgage covers "premises 301 WEST 57TH STREET 49D."  *Id.*

two weeks before Deutsche brought the foreclosure proceeding; (2) its possession of the Note in

blank; and (3) a mortgage loan schedule (the "Loan Schedule") for the Home Equity Loan Trust

2005-3, for which Deutsche served as Indenture Trustee.  *See id.* at 6–9.

With respect to its first argument, the court determined that New Century was "powerless

to make an assignment" after the bankruptcy court approved the 2008 Plan, which "terminated

[New Century's] officers and placed all of its assets" in the Liquidating Trust.  *Id.* at 6–7

(internal quotation marks and citations omitted).  For that reason, the court concluded that the

Assignment was "was of no force or effect" and thus insufficient to establish Deutsche's

standing.  *Id.* at 7.  With regards to Deutsche's second argument, the court reasoned that mere

possession of a note—even one endorsed in blank—does not create the presumption of delivery,

which is necessary for a noteholder to obtain standing.  Doc. 25-10 at 7–8 (finding that because

Deutsche's complaint did not "expressly allege, much less describe, the facts surrounding the

physical delivery of the mortgage documents," this second argument failed).  *See id.* at 7–8.

Lastly, the court rejected Deutsche's third argument because the Loan Schedule failed to

evidence that the Note and Mortgage were ever transferred to the Home Equity Loan Trust 2005-

3.  The court concluded that the length of the Loan Schedule and its obscure formatting left it

unable to conclude that the Loan was included therein[15] and that "the complaint contain[ed] no

---

[15] Specifically, the court noted: "[P]laintiff's counsel points to an entry at what appears to be line 1764 (or possibly line 1164) of page 91 of the Loan Schedule and asserts that it identifies the [Apartment].  However, it is impossible to determine the significance of any of the 30,000-plus entries on the Loan Schedule.  There are forty columns lettered A through AN at the top of each of the 225 pages, but the columns are not labeled to explain the data contained therein and the document does not supply a key.  Moreover, no[] entries identify the actual address of any property or the name of any owner.  The only information provided is a city, state, and zip code, and a series of numbers." *Id.* at 8–9.  The court also noted that an enrolled agent of the Internal Revenue Service retained by Pototschnig reviewed the Loan Schedule and concluded that the Apartment was not listed therein; Deutsche failed to submit expert testimony to the contrary.  *Id.* at 8; *see also* Doc. 25-9, Memorandum of Law in Support of Pototschnig's Motion for Summary Judgment Against Deutsche in the 2010 Foreclosure Proceeding, at 43–44 (arguing that [t]he loan and mortgage were not transferred to the Trust.  They had not been made part of the trust and are not included in the [] Loan Schedule as provided by the SEC.").

allegations regarding the securitization of the loans, the formation of [the Home Equity Loan Trust 2005-3], or [Deutsche's] role with respect to the entire transaction." *Id.* at 9.  Accordingly, the court found that "there [was] insufficient evidence in the record to establish the chain of title of the Note and Mortgage from the time of their execution to the time of the alleged assignment" and concluded that Deutsche lacked standing.  *Id.*

Later in its opinion, however, the court *did* note that "[g]iven that Pototschnig executed the Note that correctly identifies the [Apartment] and references the Mortgage, and that he executed two riders to the Mortgage with the correct description, there is little reason to doubt that the parties intended" the Mortgage to encumber Unit 49D.  *Id.* at 10.

### e.  The 2019 Foreclosure Proceeding

On June 27, 2019, Deutsche commenced another action based on the Second Default in the Supreme Court of the State of New York, New York County (the "2019 Foreclosure Proceeding"), entitled *Deutsche National Trust Company, As Indenture Trustee, For New Century Home Equity Loan Trust 2005-3 v. Hubert Pototschnig, et al* (Index No.: 109449/2010), against Pototschnig and the Board of Managers of Central Park Place Condominium (the "Board") to foreclose on the Mortgage and to cut off a lien for unpaid condominium common charges the Board had against the Apartment as subordinate to Deutsche's interest.  *See* Doc. 43-5 ¶¶ 39–40; *see also* Doc. 25-11, the 2019 Foreclosure Complaint, at 3 (alleging that "[a]ll of the [d]efendant[s]' interests are subordinate to [Deutsche's] interest").  When Deutsche commenced this proceeding, it also filed a notice of pendency (the "Notice of Pendency") against the Apartment, which states that the mortgaged premises is Unit 49D and contains a legal description of Unit 49D.  *See* Doc. 43-5 ¶¶ 40–41.

On January 28, 2020, Pototschnig moved to dismiss the 2019 Foreclosure Proceeding. *See* Doc. 43-5 ¶ 43.  Five months later, the court denied the Pototschnig's motion to dismiss, holding that res judicata did not apply because the 2019 Foreclosure Proceeding and the 2010 Foreclosure Proceeding were based upon different defaults (the "2020 Order").[16]  *See* Doc. 31-7. The 2020 Order, consistent with the 2016 Order, further rejected Pototschnig's argument that the Correction is invalid:

> [Pototschnig's] argument that the Correction was invalid due to a recording error is unavailing.  The Correction simply fixed a clerical error and, therefore, does not negate either party's intent to have entered into the Mortgage[.]  The [N]ote [Pototschnig] executed indicated the correct unit number under the property description.  Examined all together, the parties clearly agreed to mortgage unit 49D; and[] a recording error should not invalidate a mortgage where both parties mutually assented.

*See* Doc. Doc. 31-7 at 4–5.

On October 14, 2021, the Board moved for summary judgment, arguing Deutsche lacked standing.  *See* Doc. 43-4 at 3.  Deutsche argued that it could prove standing as "*both* assignee of the Note, endorsed in blank, and the Mortgage *and* as holder of the Note."  *Id.* (internal quotation marks omitted).  Deutsche claimed that it became "the assignee of the endorsed Note . . . pursuant to the Pooling and Servicing Agreement ["PSA"] dated June 24, 2005" and that "[u]pon assignment of the endorsed Note to the [Home Equity Loan Trust 2005-3], the Mortgage was also assigned to the [Home Equity Loan Trust 2005-3] . . . as an operation of law."  NYSCEF Doc. 71, Suarez Abreu Affirmation in Support of Deutsche's Memorandum in Opposition to the Board's Motion to Dismiss, at 5.[17]

---

[16] The Court takes judicial notice of this opinion and order.

[17] The Court takes judicial notice of this state court filing.

The court, however, found differently.  On January 26, 2022, it issued an order (the "2022 Order") deeming the PSA, by itself, insufficient to prove Deutsche's interest in the Apartment.  It reasoned:

> Without further explanation, the PSA does not appear to prove that New Century assigned the Note to plaintiff.  Instead, the PSA appears to show only that Deutsche was an "Indenture Trustee" to New Century's "Master Servicer," pursuant to the terms of an Indenture dated June 24, 2005.  Notably the referenced and incorporated Indenture is not included in plaintiff's papers.  Also not included in plaintiff's papers, but explicitly referenced and incorporated into the PSA:  an Amended and Restated Trust Agreement, a Servicing Agreement, and a Mortgage Loan Purchase and Agreement.  If Deutsche intended for the Court to infer assignment from, for example, Article VI of the PSA, discussing the potential a New Century default [sic], it never said or explained how.

Doc. 43-4 at 5.[18]  Having set aside Deutsche's "PSA theory of assignment," the court went on to call Deutsche's "remaining arguments . . . *reruns* from [the 2010 Foreclosure Proceeding that] fail for the same reasons."  *Id.* (emphasis added).  Accordingly, the court ruled that the neither the Loan Schedule nor Deutsche's possession of the Note, were sufficient to establish standing for the same reasons set forth in the 2016 Order.  *See id.* at 6.  Unlike the 2016 Order, the court also held that "[n]one of [the above] matters . . . as, pursuant to [t]he Plan, *the securitized mortgages seemingly implicated in the New Century Home Equity Loan Trust 2005-3 at the*

---

[18] The Court takes judicial notice of the PSA, NYSCEF Doc. 76.  The PSA defines New Century as the Master Servicer, the Home Equity Loan Trust 2005-3 as the issuer, and Deutsche as Indenture Trustee.  *Id.* at 18.  Article VI, Section 6.01(a)(1) of the PSA defines "Master Servicer Events of Default" to include "a decree or order of a court or agency . . . in an involuntary case under any present or future federal or state bankruptcy, insolvence or similar law or appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceeding, or for the winding-up or liquidation of its affairs, . . . [that has been] entered against the Master Servicer [i.e., New Century] and . . . [has] remained in force undischarged or unstayed for a period of 90 days."  NYSCEF Doc. 76 at 62.  Section 6.01(a) goes on to provide that: "[i]f a Master Servicer Event of Default . . . shall occur, . . . the Indenture Trustee [i.e., Deutsche] shall . . . terminate all of the rights and obligations of the Master Servicer in its capacity as Master Servicer under this [PSA], . . . and in and to the Mortgage Loans and the proceeds thereof."  *Id.* at 63.  Section 6.02(a)(1) next explains that "[o]n and after the time the Master Servicer receives a notice of termination, the Indenture Trustee shall be the successor in all respects to the Master Servicer in its capacity as Master Servicer under this [PSA,] . . . and all the responsibilities, duties and liabilities relating thereto and arising thereafter shall be assumed by the Indenture Trustee[.]  As compensation therefor, the Indenture Trustee shall be entitled to the Servicing Fee and all funds relating to the Mortgage Loans to which the Master Servicer would have been entitled if it had continued to act hereunder."  *Id.* at 64.

*heart of the PSA were canceled and deemed null and void by New Century's bankruptcy in July 2008.*" *Id.* at 5–6 (internal quotation marks omitted) (emphasis added).  To support this holding, the court reasoned:

> Pursuant to Article 8(E)(1) of The Plan, all New Century's assets were deemed for all purposes to have been distributed to the Liquidating Trust.  And, pursuant to Article 9(K) of [t]he Plan, . . . all notes, agreements and securities evidencing Claims and Interests and the rights thereunder of the holders thereof shall, with respect to the Debtors, be canceled and deemed null and void and of no further force and effect.

*Id.* at 3.  For these reasons, the Court ultimately concluded that Deutsche failed to "show beyond a mere assertion that it took possession of the Note" and that because it failed to show that it was the holder of the Note at the time it brought the action, it "therefore . . . ha[d] not proven that it has standing." *Id.* at 6.  Accordingly, the court granted the Board's motion for summary judgment. *Id.*

**f.   21647 LLC**

On November 19, 2020—pursuant to a judgment issued by the Supreme Court of the State of New York, New York County in an action entitled *The Board of Managers of Central Park Place Condominium v. Hubert Pototschnig a/k/a Hubert W. Pototschnig, a/k/a Hubert Pototschnig* (Index No. 118205/2009) (the "Board Action")—the Apartment was sold at public auction to 21647 LLC, a limited liability company[19] organized and based in New York (the "Sheriff's Sale").  *See* Doc. 35 ¶ 1.  Through this action, the Board successfully foreclosed on a lien for unpaid condominium common charges.[20]

---

[19] Deutsche refers to Plaintiff as a "real estate speculator."  *See* Doc. 44 at 5.

[20] The Board's lien was recorded in the Land Records on June 23, 2009.  *See* Doc. 28-31, the Board Action Complaint.

At the auction, Plaintiff purchased the Apartment for $25,000.  *See* Doc. 43-5 ¶ 49.  A Sheriff's Deed to the Premises was delivered to Plaintiff on December 9, 2020 and duly recorded in the New York County Clerk's Office on December 18, 2020.  *See* Doc. 35 ¶ 2.  The parties agree that Plaintiff is the current and sole owner of the Apartment in fee simple.  *Id.* ¶ 7.  As of January 2022, the estimated market value of the Apartment is approximately $970,000.  *See* Doc. 36, Deutsche's Memorandum in Support of its Motions, at 13.

## II.    Procedural History

On May 27, 2021, Plaintiff initiated the instant action against Deutsche to establish exclusive right to the Apartment, to vacate the mortgage against the Apartment, and to obtain declaratory judgment that the Sheriff's Sale extinguished any lien Defendant may have on the Apartment.  *See* Docs. 1, 5.  On August 30, 2021, Deutsche answered.  Docs. 15, 16.  An initial conference before the Court was held by telephone on September 17, 2021, *see* Doc. 19, and a second conference, at which the Court granted the parties leave to file their respective motions, was held by telephone on November 4, 2021, *see* Doc. 24.  Plaintiff filed its motion for summary judgment on December 2, 2021.  *See* Doc. 25.  Deutsche filed its cross motion for summary judgment on February 1, 2022, Doc. 30, asking the Court to "declar[e] that [the Mortgage] is a valid lien against Unit 49D and superior in priority to Plaintiff's fee ownership interest.[21]  Doc. 36 at 28.

## III.   Legal Standard

---

[21] Deutsche also filed a cross motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Doc. 30.  Deutsche, however, has withdrawn the lone basis for its motion to dismiss:  that the Court should decline to exercise subject matter jurisdiction over this action.  *See* Doc. 44, Deutsche's Response to Plaintiff's Opposition, at 5, n.2 ("Due to the Supreme Court, New York County's January 20, 2022 decision dismissing the 2019 Action . . ., which was issued after Deutsche made its cross motion, Deutsche hereby withdraws the branch of its cross-motion seeking to dismiss this action on subject matter jurisdiction grounds.").  Deutsche asks only for summary judgment in its Response to Plaintiff's Opposition.  *See id.* at 14. Accordingly, the Court considers only its motion for summary judgment.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

The same legal standard applies when analyzing cross-motions for summary judgment. *See Schultz v. Stoner,* 308 F. Supp. 2d 289, 298 (S.D.N.Y.2004) (quoting *Aviall, Inc. v. Ryder Sys., Inc.,* 913 F. Supp. 826, 828 (S.D.N.Y.1996)). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.,* 667 F.2d 305, 314 (2d Cir.1981)). The Court is not required to grant summary judgment in favor of either moving party. *See id.* (citing *Heublein Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir. 1993)).

## IV.   Discussion

### a.   Count I

Plaintiff argues that the Sheriff Sale extinguished the Mortgage, citing NY CPLR § 5236(e), which provides: "A judgment creditor duly notified pursuant to subdivisions (c) or (d) who fails to deliver an execution to the sheriff prior to  the  sale  shall  have  no further lien on the property and, except as against the judgment debtor, no further interest in the proceeds of the sale." *See* Doc. 25-12, Plaintiff's Memorandum in Support of its Motion for Summary Judgment, at 28.  Plaintiff reasons that the Mortgage was extinguished because Deutsche, a judgment creditor, received notice of the foreclosure sale in the Board Action but did not deliver an execution. *Id.*

Deutsche, however, is *not* a judgment creditor and was therefore under no obligation to return an execution.  As Deutsche explains, CPLR § 5236(c) distinguishes between judgment creditors and other lien holders, and § 5236(e) imposes a duty to deliver an execution only on judgment creditors, not on lien holders.[22]  Authorities cited by Deutsche supports its contention

---

[22] The full text of § 5236(c) provides:  "A list containing the name and address of the judgment debtor and of every judgment creditor whose judgment was a lien on the real property to be sold and of every person who  had  of record

that mortgagees, like Deutsche, are not judgment creditors.  *See, e.g.*, *Berlin v. United States*, 535 F. Supp. 298, 301 (E.D.N.Y. 1982) ("On its face 5236(e) relates only to judgment creditors and does not govern other types of creditors. . . . 'Mortgagees and other categories of creditor whose liens are senior to that of the judgment being levied do not lose their liens.'") (quoting DAVID D. SIEGEL, N.Y. Prac. § 500 (6th ed.) ("Other categories of senior lienholders, such as a mortgagee, retain their liens, to which the buyer at the sale takes subject[.]")).

The sole case cited by Plaintiff in support of its claim that Deutsche is a judgment creditor is *Bank Leumi Trust Co. of N.Y. v. Liggett*, 115 A.D.2d 378 (1st Dep't 1985).  *See* Doc. 25-12 at 28 (citing *Bank Leumi Trust* for the proposition that New York Courts "broadly" interpret the phrase "judgment creditor" in CPLR § 5236).  But in that case, the court considered whether, upon sale of a property pursuant to execution of a superior lien, a *subordinate* mortgagee would be entitled to a share of the proceeds pursuant to 5236(g).  *See Bank Leumi Trust*, 115 A.D.2d at 379–380.  Nowhere in the opinion does the court interpret the phrase "judgment creditor" to mean mortgagees.  Rather, the court distinguishes between a "lien creditor (whether by way of judgment or mortgage or tax lien or mechanic's lien, etc.)" and a judgment creditor.  *Id*. at 379.  In its reply to Deutsche's opposition, Plaintiff does not address this counterargument; indeed, it does not discuss § 5236 at all.  *See generally* Doc. 43.

Deutsche separately argues that because the Mortgage was recorded in 2005, whereas the Board's Lien was recorded four years later in 2009, the Mortgage is the first mortgage of record and therefore could not have been extinguished by the Sheriff's sale.  *See* Doc. 36 at 24–26.

---

any  interest  in  or lien on such property forty-five days prior to the day fixed for the sale shall be furnished the sheriff  by  the  judgment creditor,  and  each  person  on the list shall be served by the sheriff with a copy of the notice by  personal  delivery  or  by  registered  or certified  mail, return receipt requested, at least thirty days prior to the day fixed for the sale." NY CPLR § 5236(c).

According to Deutsche, NY Real Property Law ("RPL") § 339-z provides that a "board of managers, on behalf of the unit owners, shall have a lien on each unit for the unpaid common charges thereof, together with interest thereon, prior to all other liens *except* . . . all sums unpaid on a first mortgage of record."  In light of this rule, the execution of the Board's subordinate lien could not have extinguished the Mortgage.  *See, e.g.*, *Bd. of Managers of Regent's Park Gardens Condo v. Chavez*, 136 A.D.3d 953, 954 (2d Dep't 2016) ("However, contrary to [defendants'] contention, the mortgage held by US Bank was superior to the common charges lien held by the plaintiff.  Since the mortgage was superior to the common charges lien being foreclosed, US Bank did not lose its lien and [defendants] took the property subject to the lien.").  Plaintiff also fails to address this argument in its opposition.

The Court agrees with Deutsche's application of both RPL § 339-z and CPLR § 5236.  The Court further finds that by failing to respond to Deutsche's arguments for why the Sheriff's Sale did not extinguish the Mortgage, Plaintiff has abandoned its claim.  A court "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."  *Lipton v. Cnty. Of Orange, NY,* 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004).

For all of the foregoing reasons, the Court finds that the Sheriff's Sale did not nullify the Mortgage as a matter of law.

### b.  Count II

According to Plaintiff, because Deutsche failed to commence a special proceeding to determine its rights in the Apartment prior to the Sheriff's Sale, Deutsche is time-barred from claiming "any interest in the [Apartment] superior to that of Plaintiff."  Doc. 25-12 at 29.  Plaintiff reasons that under CPLR § 5239, "[p]rior to the application of property or debt by a

sheriff or receiver to the satisfaction of a judgment, any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt." Doc. 25-12 at 29. Since Deutsche was allegedly aware of the Sheriff's Sale, Plaintiff contends that "it cannot claim any interest in the [Apartment] superior to that of the judgment creditor from which Plaintiff's interest derives." *Id.*

In response, Deutsche argues that Plaintiff misconstrues CPLR § 5239. The Court agrees. Section 5239 plainly states that "any interested person *may* commence a special proceeding against the judgment creditor" (emphasis added)—not that an interested party *must* do so. Deutsche was therefore under no obligation to bring a special proceeding. Plaintiff fails to address this argument in its opposition and offers no alternate reason for why Deutsche is time-barred from enforcing the Mortgage.

The Court therefore finds that, as a matter of law, Deutsche was under no obligation to commence a special proceeding against the creditor. The Court also finds that Plaintiff has abandoned this claim by failing to respond to Deutsche's arguments in opposition. *See* Doc. 44 at 14 (citing *Lipton,* 315 F. Supp. 2d at 446).

### c. **Counts III, IV, V, VI**

In Counts III through VI of the complaint, Plaintiff seeks declaratory judgment that the Correction is null and void, not recordable as a lien against the Apartment and of no effect, to cancel the Correction, to quiet title (and bar Deutsche from ever claiming an interest in the Apartment), and for declaratory judgment that Plaintiff purchased the Apartment free and clear of any mortgage. In support of these claims, Plaintiff argues: (1) that the 2022 Order nullified the Mortgage, and the doctrine of res judicata precludes Deutsche from relitigating that question; (2) that the Mortgage encumbers Unit 23B, not Unit 49D; (3) that the Correction is invalid; and

(4) that it purchased the Apartment free and clear of any mortgage as a bona fide purchaser of the Apartment for value.  For the reasons set forth below, the Court finds each of these arguments to be without merit.

### i.   Res Judicata

Plaintiff argues that res judicata requires the Court to deny Deutsche's cross-motions and grant Plaintiff's motion because the 2022 Order found that the Plan "nullified" the Note and Mortgage, and that Deutsche did not hold the Note and Mortgage before the bankruptcy court approved the Plan.  *See* Doc. 43 at 23.  The Court disagrees.  Because the 2022 Order decided necessarily *only* that Deutsche lacked standing, and because the Deutsche does not here seek to foreclose on the Apartment,[23] neither issue nor claim preclusion apply.

"Res judicata . . . encompasses two significantly different doctrines, claim preclusion and issue preclusion."  *See Marcel Fashions Group, Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107 (2d Cir. 2015).  The Court will first discuss issue preclusion, sometimes known as collateral estoppel.  Issue preclusion has effect where an issue of law or fact was "raised, litigated, and *actually decided* by a judgment in a prior proceeding between the parties, if the determination of that issue was *essential* to the judgment, regardless of whether or not the two proceedings are based on the same claim."  *Nat'l Labor Relations Bd v. United Tech. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983) (emphasis added).[24]

---

[23] Deutsche seeks only declaratory judgment that the Mortgage is a valid lien against Unit 49D and superior to Plaintiff's fee ownership interest in Unit 49D.  Doc. 36 at 28.

[24] A federal court must apply the rules of preclusion of the state in which the prior judgment was rendered.  *See, e.g., Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000).  Section 1738 of Title 28 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.  New York has adopted a transactional test for res judicata issues, which defines a claim or cause of action as coterminous with the underlying factual transaction.  *Smith v. Russell Sage College*, 54 N.Y.2d 185, 192–93 (N.Y. 1981).  "A 'cause of action' may denote one of several separately stated claims in a

The 2022 Order explains that to have standing in a foreclosure action, a plaintiff must prove "it is both the holder or assignee of the subject mortgage and holder or assignee of the underlying note at the time the action commenced."  Doc. 43-4 at 5 (internal quotation marks omitted).  The court ultimately found that Deutsche lacked standing.  It reasoned that "the securitized mortgages seemingly implicated in the Home Equity Loan Trust 2005-3 at the heart of the PSA were canceled and deemed null and void by New Century's bankruptcy in July 2008." *Id.*  Because the Assignment occurred in 2010, two years later, it had no effect since the Mortgage and Note were already nullified.  *See id*. at 3–6.  The court further found that neither Deutsche's possession of the Note in blank, nor the Loan Schedule, nor the 2005 PSA adequately substantiated its interest in the Mortgage and Note before the Plan went into effect.  43-4 at 5–6. For these reasons, the court held that Deutsche lacked standing to bring the 2019 Foreclosure Proceeding, just as another state judge held in the earlier 2016 Foreclosure Proceeding.[25]  *Id.* at 6; *see* Doc. 25-10.

Here, Plaintiff argues that the 2022 Order determined not only that Deutsche did not own the Note and Mortgage in 2019, but that Deutsche did not own the note and mortgage prior to their nullification in July 2008.  *See* Doc. 43 at 24.  Plaintiff therefore contends:

> [u]nlike a typical dismissal for lack of standing, where a standing deficiency can be corrected by new facts – i.e., acquisition of the note and mortgage prior to commencement of a subsequent action – here, no new developments would enable [Deutsche] to go back in time and acquire the note and mortgage prior to the July 2008 nullification and cancellation thereof.

---

pleading based on the same congeries of facts but related to different legal theories of recovery."  *Id.* (quoting *Reilly v. Reid*, 45 N.Y.2d 24, 29 (N.Y. 1978)).

[25] The reason the 2016 Order did not preclude the 2019 Foreclosure Proceeding is because the foreclosure actions related to two separate defaults.  *See* Doc. 31-7 at 4 ("This [c]ourt finds defendant's argument unavailing because two subject mortgage foreclosure actions arose from two separate defaults giving rise to separate and independent causes of action[.]")

*Id.* (internal quotation marks omitted).

As a preliminary matter, the Court disagrees with the finding in the 2022 Order that the Plan cancelled the Mortgage and Note.  Article 9(K) of the Plan states that:

> all notes, agreements and securities evidencing Claims and Interests and the rights thereunder of the holders thereof shall, with respect to the Debtors, be canceled and deemed null and void and of no further force and effect, and the holders thereof shall have no rights against the Debtors . . . and such instruments shall evidence no such rights, except the right to receive the distributions provided for in this Plan."

Doc. 45-1 at 60.  The plan defines "Claim" as a claim against the debtors or the estates, and "Interest" as a stock, share, etc. in the debtors.  *Id.* at 12.  In other words, Article 9(K) dealt with obligations of New Century.  As Deutsche correctly argues, it would be nonsensical for the bankruptcy court to have canceled New Century's *assets* (in the form of notes and mortgages owed to it), since those assets were necessary to pay off creditors.  *See* Doc. 44 at 10.

In any event, the 2022 Order did not *necessarily* determine that Deutsche was not the holder or assignee of the Note and Mortgage prior to 2008, that Deutsche has no interest at all in the Apartment, or that the Plan nullified the Note and Mortgage.  None of those findings were *essential* to the court's decision, as is necessary for issue preclusion to apply.  The court determined only that Deutsche lacked standing, meaning that Deutsche failed to show "beyond a mere assertion" that it was holder or assignee of the Mortgage and holder or assignee of the Note at the time the action commenced.  *See* 43-4 at 6.  Put simply, the court found that Deutsche failed to make the requisite evidentiary showing:  "[W]ithout further explanation," neither the Loan Schedule, the PSA, its possession of the Note in blank, nor the Assignment met the mark.  *Id.* at 5.  The court necessarily decided nothing else.  For that reason, issue preclusion does not apply.

Claim preclusion, sometimes referred to simply as res judicata, provides that "a valid final judgment bars future actions between the same parties on the same cause of action." *Parker v. Blauvelt Vol. Fire Co., Inc.,* 93 N.Y.2d 343, 347 (1999). Claim preclusion does not apply because the cause of action here is not the same as the cause of action in the 2020 Foreclosure Action.

### ii.   Unit 23B

Plaintiff argues that the Correction is null and void, and of no force and effect as a lien against the Apartment, because the plain language of the Mortgage indicates that it encumbers Unit 23B, not Unit 49D. *See* Doc. 43 at 9. Alternatively, Plaintiff contends that because the Mortgage references both Unit 23B and Unit 49D, it is ambiguous and hence void. *See id.* at 20–22. For the reasons explained below, the Court finds that there is no reasonable dispute over whether the Mortgage encumbers Unit 49D; extrinsic evidence, of which the Court takes note, makes clear that it does.

### 1)   The Language of the Mortgage

According to Plaintiff, under New York law, a conveyance of an interest in realty requires the party "sought to be bound" to sign an agreement. *See* Doc. 25-12 at 16 (citing General Obligations Law ("GOL") § 5-703(1) ("An estate or interest in real property . . . cannot be created . . . unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating . . . the same.")). To be valid, the agreement must explicitly identify the property conveyed. *Id.* (citing *Hulburt v. Walker*, 258 N.Y. 8, 11 (1931) ("[A] writing, not containing, when signed, words essential to a conveyance, is not an instrument of conveyance."). Here, Plaintiff contends that the language of the Mortgage cannot be construed as to encumber any property other than Unit 23B. *See* Doc. 43 at 9. The Court disagrees.

22

Without considering parole evidence, the Mortgage is ambiguous as to which property it encumbers because it references two distinct properties.

The first page of the Main Form of the Mortgage refers in handwriting to Unit 23B, and its block, lot, and street address and makes no reference to Unit 49D.  *See* 25-3 at at 3.  Furthermore, the third page of the Main Form, under the "Description of the Property" section, states in print that Pototschnig grants New Century certain rights to "[t]he Property which is located at 301 W 57th St. 49D New York," but "49D" is crossed out, and "23B" is handwritten next to it.  *See id.* at 5.  Lastly, the three-age Legal Description refers only to Unit 23B, and contains no handwritten text.  *See id.* at 6–8.

However, Pototschnig did not sign or initial next to any of the handwritten references to Unit 23B.  *See id.* at 3, 5.  Nor did he sign or initial any page of the Legal Description.  *See id.* at 6–8.  Additionally, the second and third pages of the Main Form refers to the Note, which Pototschnig signed and delivered to New Century, *see* Doc. 25-3 at 4–5; Doc. 43-5 ¶ 6, and which refers exclusively to Unit 49D, *see* Doc. 33-1.  Additionally, page 17 of the Main Form (i.e., the notarized signature page), twice refers to the section, block, and lot number of Unit 49D, though the page does not expressly say "49D."  *See* Doc. 25-3 at 22.  Lastly, each of the Riders to the Mortgage reflect Unit 49D as collateral for the Mortgage.  *Id.* at 23–31.  None of the Riders mention Unit 23B.  *Id.*  Pototschnig signed or initialed every page of the Main Form and the Riders.

Despite the Mortgage's repeated references to both Unit 49D and Unit 23B, Plaintiff makes four specific arguments for why its "four corners" establish that it was intended to cover Unit 23B.  *See* Doc. 43 at 9.  The Court is unpersuaded by any of these arguments.

First, Plaintiff argues that the "Description of the Property," *see* Doc. 25-3 at 5, which refers to Unit 23B in handwritten text and crosses out 49D, dispositively proves that the Mortgage encumbers Unit 23B.  *See* Doc. 43 at 10–11.  Plaintiff cites *Emigrant Bank v. Rosabianca*, 156 A.D.3d 468 (1st Dep't 2017) and *Fed. Natl. Mtge. Assn. v. Edwards*, 189 A.D.3d 780, 780–82 (2d Dep't 2020) in support of this argument.  In *Rosabianca*, Plaintiff alleges that the court resolved a discrepancy between a property identified in the legal description of a mortgage, and another property identified in the affidavits annexed to the mortgage, in favor of the property identified in the legal description.  *See* Doc. 43 at 11.  But that simply is not true.  *Rosabianca* did not involve a dispute as to the property encumbered by the mortgage; and the language ostensibly relied upon by Plaintiff appears in *dicta* in a *footnote* to the *dissent*.  *See Rosabianca*, 156 A.D.3d at 479, n.1.

*Edwards* also is not analogous.  In that case, the court held that a mortgage granted against three of the borrower's tax lots did not encumber other tax lots that the borrower owned that were subsequently combined with the three mortgaged lots into a new tax lot.  *See Edwards*, 189 A.D.3d 780–82.  Unlike the Mortgage here, the main form of the mortgage in *Edwards* did not conflict with the legal description attached thereto.  There was therefore no discrepancy for the court to resolve.  *See id.*  For these reasons, the Court is unconvinced by Plaintiff's allegation that the "Description of the Property" establishes that the Mortgage covered 23B.

Second, Plaintiff argues that although the Mortgage contains two references to the lot number corresponding to Unit 49D on the signature page, the Court must disregard these references because they appear beneath Pototschnig's notarized signature.  *See* Doc. 43 at Note 4, 11 (citing *Maurice v. Maurice*, 131 A.D.3d 454, 456 (2d Dep't 2015) ("[T]he section, block, and lot number that were inscribed on the deed also could not serve as a legal property

description, since that information appeared below the mother's signature and the acknowledgment thereof, and thus, was not part of the instrument purportedly subscribed and executed by the mother.  [A] subscription within the meaning of the statute of frauds is a writing at the end of the memorandum.")).  Therefore, Plaintiff contends that the only lot number included in the Mortgage that the Court can consider is the lot number corresponding to Unit 23B, which appears on the first page of the Main Form and in the Legal Description.[26]  Next, Plaintiff argues that where, as here, a single instrument of conveyance contains conflicting references to the address of one property, and a tax lot number corresponding to another property, the lot number controls.  *See* Doc. 43 at 11–12.  In support of that claim, Plaintiff cites *Srp 2012-5, LLC v. Corrao*, 167 A.D.3d 798, 800 (2d Dep't 2018).

Contrary to Plaintiff's assertion, *Corrao* does not address how courts should analyze a mortgage that contains a conflicting address and lot number.  *Corrao* involves a property spanning three lots that, pursuant to a judgment of foreclosure and sale, was sold as one parcel. The judgment of foreclosure referenced *only* one lot, whereas the legal description attached to the mortgage described three lots.  The court rejected defendant's request to limit to foreclosure judgment to only the referenced lot, reasoning that the legal description—which encompassed all three lots—took precedence over the foreclosure judgment.  *Corrao* 167 A.D.3d at 800.

In contrast to *Corrao*, the dispute here occurs not between the Mortgage and some other "instrument of conveyance," but rather between provisions of the Mortgage itself.  Furthermore, in *Corrao*, the foreclosure judgment did not reference the two disputed parcels.  Unit 49D, however, appears on every page of the Mortgage's Riders and is implicitly incorporated into the

---

[26] The Riders—as well the Note referenced on pages two and three of the Main Form—refer only to the *address* of Unit 49D and not to its lot number.

Mortgage by way of the references to the Note in the Main Form.  It is therefore more accurate to say that *Corrao* stands only for the proposition that when a court's foreclosure order does not reference a portion of a property—but when the legal description attached to a mortgage includes that portion—the legal description controls.  *See also Congregatoin Yetev Lev D'Satmar v. 26 Adar N.B. Corp.*, 219 A.D.2d 186, 188–191(finding that a petition for court-authorized transfer of property's failure to mention the property's actual street address did not limit the scope of the conveyance where the property's legal description referenced a larger parcel of land).  For these reasons, *Carrao* is not analogous.

Third, Plaintiff argues that pursuant to RPL § 339-i, the Mortgage cannot encumber Unit 49D because it does not reference or purport to encumber "the portion of the common elements of the Condominium appurtenant to Unit 49D."  *See* Doc. 43 at 12.  In relevant part, RPL § 339-i provides:  "Each unit shall have appurtenant thereto a common interest as expressed in the declaration" and that "[t]he common interest appurtenant to each unit as expressed in the declaration shall have a permanent character and shall not be altered. . . . The common interest shall not be separated from the unit to which it appertains."  Section 339-L further states that "liens may arise or be created only against the several units and their respective common interests."  Based on these provisions, Plaintiff argues that because the Mortgage does not reference Unit 49D's purported .2807% interests in the common elements of the condominium, the Mortgage cannot encumber the Apartment.  *See* Doc. 43 at 12.[27]  Rather, the Legal Description provides that that the Mortgage encumbers .2999% of the common elements

---

[27] Without specifying a paragraph or page number, Plaintiff cites to a 56-page document, Doc. 25-9, containing various filings from the 2010 Foreclosure Proceeding to substantiate its claim that a declaration recorded by the Board of Premises provides that .2807% of the common elements are appurtenant to Unit 49D.  *See* Doc. 43 at 13. The Court finds no reference to any .2807% interest in that document.  Whether Plaintiff is correct on this question, however, is immaterial since the Court finds Plaintiff's line of argument with respect to RPL § 339 without merit.

appurtenant to Unit *23B*. Plaintiff thereby extrapolates that the Mortgage cannot encumber Unit 49D.

The Court disagrees. While the Court acknowledges that the Legal Description refers only to Unit 23B, this fact does not settle the question of which apartment the Mortgage encumbers. Plaintiff does not point to any case where a court—reviewing a mortgage that refers to more than one unit within a condominium—has resolved a dispute by looking solely to the common elements interest specified by the mortgage.[28] Nor has the Court been able to find such a case. For these reasons, the Court finds that the failure to reference the portions of the common elements appurtenant to the Apartment does not resolve the ambiguity inherent in the Mortgage.

Fourth, Plaintiff argues that "[w]here a contract contains two repugnant provisions, the one printed and the other written, it is well settled that the latter must control the interpretation of the instrument, as it is presumed to express the latest intention of the parties." *Kratzenstein v. Western Assur. Co of City of Toronto*, 116 N.Y. 54 (1889). Relatedly, Plaintiff argues that "'in the case of total repugnancy between two contract clauses, the first of such clauses shall be received, and the subsequent one rejected.'" *Brennan v. Bally Total Fitness*, 153 F.Supp.2d 408 at 415–16 (quoting *Honigsbaum's, Inc. v. Stuyvesant Plaza, Inc.* 178 A.D.2d 702 (3rd Dep't 1991)). Here, the Mortgage's references to Unit 23B are, in part, in handwriting, whereas its references to Unit 49D are exclusively in print. Additionally, Unit 23B is handwritten at the top of the Main Form of the Mortgage, appearing first. For these reasons, alone, Plaintiff contends that the Mortgage cannot be construed to encumber Unit 49D.

---

[28] Plaintiff cites *Advanced Alarm Technology, Inc.* v. *Pavilion Associates,* 145 A.D.2d 582 (2d Dep't 1998) in support of this argument. As Deutsche correctly argues, that case did not hold in that a mortgage failed to encumber a condominium unit because the mortgage did not include the common elements appurtenant to that unit. Rather, the court invalidated a mechanic's lien that was improperly filed as a blanket lien against the entire condominium building, as opposed to the individual unit for which work was performed. *See* Doc. 44 at 8.

In response, Deutsche argues that, as a practical matter, Pototschnig did not sign or initial the Legal Description or any of the handwritten changes to the Main Form; thus, neither the Court, nor any reasonable trier of fact, could find with any degree of confidence that someone did not retroactively make the handwritten changes and replace the Legal Description without the parties' knowledge. *See* Doc. 36 at 17 (calling the references to Unit 23B "clearly typographical and clerical errors . . . very likely made after [Pototschnig] executed the Mortgage"). Plaintiff offers no proof that the parties were aware of the handwritten changes or of the Legal Schedule prior to entering into the Mortgage. *See generally* Docs. 25-12; 43.

Additionally, while Deutsche does not dispute the legal maxims cited by Plaintiff as well-established tenets of *contract* law, it nonetheless asserts that equally well-established principles of *property* law require that the Court consider evidence beyond the four corners of the Mortgage to resolve its conflicting language and give effect to the contracting parties' original intent. *See* NY RPL § 240(3) ("Every instrument creating, transferring, assigning or surrendering an estate or interest in real property must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law."); *see also id.* subd. 3 para. 3 ("[W]here the property descriptions in a mortgage conflict, no description (metes and bounds, street address or block and lot) has precedence. Rather where 'there is a conflict between the metes and bounds description and the street address and/or tax lot numbers given in the mortgage, there is an ambiguity that requires consideration of parole evidence.'") (quoting *JPMorgan Chase Bank, N.A. v. Zhan Hua Cao,* 160 A.D.3d 821, 822 (2d Dept. 2018) (internal quotation marks and citations omitted)).[29]

---

[29] The Court rejects Plaintiff's arguments that the intent of contracting parties is irrelevant, *see* Doc. 43 at 16–17, or that a mortgage that refers to two different parcels of land is automatically void, *id.* at 20 –22. Caselaw makes clear not only that instruments conveying real property "must be construed according to the intent of the parties," but also that where a mortgage is ambiguous, "courts will look beyond the written instrument to the surrounding

Although the Court acknowledges that *generally* the first clause referenced in a contract takes precedence over a later written clause, and that handwritten text *generally* takes precedence over printed text, the Court does not, as a matter of law, award dispositive weight to either of these principles in light of:  (1) the practical reality that it remains unknown when—or by whom—the handwritten additions to the Mortgage were made; and (2) the countervailing tenet of property law that instructs courts to look to extrinsic evidence when a mortgage refers to two parcels of land so as to better understand the contracting parties' intent.

For these reasons, the Court finds that because the terms of the Mortgage are ambiguous, the Court must consider extrinsic evidence to discern the intent of New Century and Pototschnig. *See Zhan Hua Cao,* 160 A.D.3d at 822.

### 2)   The Extrinsic Evidence

As Deutsche notes, courts "may resolve [] ambiguity in [] contractual language as a matter of law if . . . the extrinsic evidence is so-one sided that no reasonable fact finder could decide contrary to one patty's interpretation." *Compagnie Financiere de CIC et de L 'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 232 F.3d 153, 159 (2d Cir. 2000). Moreover, even absent a claim for reformation, a court may "'as a matter of interpretation carry out the intention of a contract by transposing, rejecting, or supplying words to make the meaning of the contract more clear,' but this approach is suitable 'only in those limited instances where some absurdity has been identified or the contract would otherwise be unenforceable either in

---

circumstances." *Al's Atl., Inc. v. Shatma, LLC*, 109 A.D. 3d 491, 492 (2d Dep't 2013) (citing *Cordua v Guggenheim*, 274 NY 51, 57 (1937) ("Where the language of the deed is ambiguous, however, parol evidence is admissible to show the intent of the parties."); *Matter of New Cr. Bluebelt, Phase 4*, 79 AD3d 888, 891 (2d Dep't 2010); *De Paulis Holding Corp. v Vitale*, 66 AD3d 816, 818 (2d Dep't 2009); *see also Canada Life Assur. Co. v. Guardian Life Ins. Co. of Am.,* 242 F. Supp. 2d 344, 358 (S.D.N.Y. 2003) ("The existence of ambiguous terms alone does not void contracts. . . If every time an ambiguity arose concerning a term of an insurance contract, one party were allowed to nullify the contract . . . these well-settled doctrines [of contract interpretation] would have been developed in vain.").

whole or in part.'" *Jade Realty LLC v. Citigroup Comm. Mortg. Trust 2005-EMG*, 20 N.Y.3d 881, 883–84 (2012), *quoting Matter of Wallace*, 86 N.Y.2d 543, 547–48 (1995); *1414 APF, LLC v. Deer Stags, Inc.*, 39 A.D.3d 329, 331 (1st Dep't 2007) (holding that court intervention was necessary to correct provision in lease agreement that would lead to absurd result).

Here, the parole evidence—none of which Plaintiff opposes—leaves no reasonable doubt that the parties meant for the Mortgage to encumber the Unit 49D.  The record before the Court is devoid of any evidence that Pototschnig ever had an ownership interest in Unit 23B.  Indeed, the Land Records indicate that Pototschnig never held such an interest in Unit 23B.  *See* Doc. 29-23.  Nor does Plaintiff allege as such.  In contrast, it is undisputed that Pototschnig obtained the Deed to Unit 49D on November 15, 1990.  *See* Doc. 29-22.  Plaintiff provides no explanation for why Pototschnig would seek out a mortgage against an apartment in which he has no discernable interest.  What's more, the Note refers exclusively to Unit 49D.  *See* Doc. 33-1.  Pototschnig's loan application refers exclusively to Unit 49D.  *See* Doc. 28-6.  And all 18 loan-related documents—each of which Pototschnig signed or initialed—refer exclusively to Unit 49D.  *See* Docs. 28-8, 28-9, 28-10.  Consistently, the 2016 Order, as part of the 2010 Foreclosure Proceeding, found that "there is little reason to doubt that the parties intended" the Mortgage to encumber Unit 49D, *see* Doc. 25-10 at 10, and the 2020 Order, as part of the 2019 Foreclosure Proceeding, held similarly, deeming the Mortgage's reference to Unit 23B a "clerical error," *see* Doc. 31-7 at 4.

In light of this overwhelming, one-sided evidence—and absent any substantive objection to it from Plaintiff—the Court finds, as a matter of law, that it would be absurd to construe the Mortgage to encumber any apartment other than Unit 49D.  *See Compagnie Financiere*, 232 F.3d at 159; *Jade Realty*, 20 N.Y.3d at 883–84.

### iii. The Correction

Plaintiff also argues that the Correction is of no effect because "New Century could not reform the Mortgage of its own initiative without the approval or consent of [Pototschnig and because a] modification to the Mortgage by New Century would require judicial approval." *See* Doc. 25-12 at 13.  The Court disagrees.

First—and as already noted—even absent a reformation claim, courts *may* reject certain terms of a contract when they result in an absurd outcome.  *See Jade Realty*, 20 N.Y.3d at 883–84 (2012); *see also 1414 APF, LLC v. Deer Stags, Inc.*, 39 A.D.3d 329, 331 (1st Dep't 2007).  Here, the Court has deemed the prospect of the Mortgage encumbering Unit 23B absurd in light of the unrefuted parole evidence.

Beyond this, however, the Correction was not unauthorized; New Century hired First American to effect the Correction, as is made clear by the contract between the two.  *See* Doc. 29-9.  Section 4(b) of New Century's title insurance policy authorizes First American to "to do any act . . . which in its opinion may be necessary or desirable to establish . . . the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the Insured."  Plaintiff does not respond to Deutsche's argument that correcting a mis-recording of the Mortgage is a type of corrective action contemplated by Section 4(b).  *Id.* at 4.  Plaintiff, furthermore, does not respond to Deutsche's related point that Pototschnig expressly agreed to cooperate with New Century in making any adjustments or corrections needed to fix any clerical errors in the Loan documents in the Error and Omissions Compliance Agreement.  For these reasons, the Court disagrees with Plaintiff's argument that the Correction is invalid.

### iv. Bona Fide Purchaser for Value

Separately, Plaintiff also argues that it, as bona fide purchaser of the Apartment under RPL § 291, is entitled to ownership of the property free and clear of the Correction.  The Court disagrees.

Section 291 is a race-notice recording statute that provides that every conveyance of real property in New York not recorded in the Land Records "is void as against any person who subsequently purchases . . . the same real property . . . in good faith and for a valuable consideration, from the same vendor or assignor, his distributees or devisees, and whose conveyance . . . first duly recorded."  To seek safe harbor under RPL § 291, a purchaser must prove that it had no notice, actual or constructive, of the alleged adverse interest in the property when it acquired its interest in the property.  *See Pereira v. Ruggerite, Inc.*, No. 03 Civ. 1071(TPG), 2004 WL 324847 at * 3 (Bankr. S.D.N.Y. Feb. 19, 2004) ("[A] good faith purchaser is known as a bona fide purchaser.  Bona fide purchaser status cannot be obtained under New York law if the purchaser has actual or constructive notice of an unrecorded prior interest in the property in question."); *see also Alaska Holdings, LLC v. 214 Lafayette House, LLC*, 177 A.D.3d 103, 104–05 (1st Dep't 2019) (holding that where the plaintiff acquired its interest in the property with constructive notice of the easement, is not a bona fide purchaser and, therefore, lacks standing to void the easement).  "A bona fide purchaser is one who would have checked the appropriate recording office for real estate transfers and who would not have learned of any impairment in the transferor's title."  *In re Moselle*, 190 B.R. 165 (Bankr. S.D.N.Y. 1995).

Here, Plaintiff had constructive notice of the Mortgage because it purchased Unit 49D subject to the Notice of Pendency Deutsche filed as part of the 2019 Foreclosure Proceeding.  *See United States v. Rodriguez-Perez*, No. S38 10 CR 905-LTS, 2019 WL 188400, at *6–7 (S.D.N.Y. Jan. 11, 2019) ("Groner's assignment to Petitioners was executed almost a year after

the Government filed its notice of pendency, which provided Petitioners with constructive notice, at the time of purchase, that the government was seeking forfeiture of the entire parcel of real property . . . .  [The petitioners] were not bona fide purchasers for value."); *Herman v. Herman*, No. 19 Civ. 3662 (JMF), 2020 WL 2086193, at * 3–4 (S.D.N.Y. Apr. 30, 2020) (holding that the defendants were not bona fide purchasers because they "were on notice of [p]laintiffs' claim to the property due to the pending [n]otice of [p]endency."); *In re Cerrato*, 504 B.R. 23, 33 (E.D.N.Y. 2014) ("Any purchaser of the Property, as of the commencement of this case, would be charged with notice of the public record, which includes any properly recorded instruments. As of the commencement of the . . . bankruptcy, the public record included the [f]oreclosure [j]udgment, the notice of pendency.").

Deutsche clearly asserted in the 2019 Action its belief that the Mortgage encumbers Unit 49D and sought to foreclose the Mortgage against Unit 49D.  Therefore, Plaintiff indisputably had pre-purchase constructive notice of Deutsche's claim the Mortgage encumbered Unit 49D and cannot "close [its] eyes" to that reality.  *O'Connell v. JPMorgan Chase Bank National Association,* No. 12 Civ 1951 (ENV), 2012 WL 6151972, at *4 (E.D.N.Y. Dec. 11, 2012) (affirming the bankruptcy court's denial of a bankruptcy's trustee's motion seeking to avoid a mortgage that the debtor had granted before filing for bankruptcy—but which had been improperly recorded against another property—on the ground that the trustee was on constructive notice of the unrecorded mortgage where a subsequent properly recorded mortgage made multiple references to the prior unrecorded mortgage); *see also In re Sheppard,* 471 B.R. 45 (W.D.N.Y. 2012) (holding although the recorded mortgage was not signed by the borrower and, therefore, would have been void against any subsequent bona fide purchaser, because the

lender filed a notice of pendency when it commenced its foreclosure action, the trustee of the borrower's bankruptcy estate could not acquire bona fide purchaser status).

For these reasons, the Court finds, as a matter of law, that Plaintiff is not a bona fide purchaser for value.

**V.     Conclusion**

For the foregoing reasons, the Court finds that the Mortgage—recorded with the Land Records on December 9, 2005 at CRFN 2005000681531—is a valid lien against real property at 301 West 57th Street, Unit 49D, New York, New York, and is superior in interest to Plaintiff's fee ownership interest in Unit 49D.  Accordingly, Plaintiff's motion for summary judgment is DENIED, and Deutsche's motion for summary judgment is GRANTED.  The Clerk of the Court is respectfully directed to terminate the pending motions, Doc. 25, 30, and 46, and close the case.

It is SO ORDERED.

Dated:    September 29, 2022
          New York, New York

_____

                    Edgardo Ramos, U.S.D.J.